Good morning, Your Honors. Theodore Boutrous for Hyundai Motor America. I'd like to reserve three minutes for rebuttal, and I'll keep an eye on the clock. This Court has already confronted the exact issues in this appeal and decided how they should be resolved. In Mohammed v. Uber, the Court held that an agreement delegating, quote, the enforceability, revocability, or validity of the arbitration provision to an arbitrator was clear and unmistakable, and thus the issues of arbitrability were for the arbitrator, not the Court. And in Mohammed, the Court rejected the plaintiff's attempt to manufacture an ambiguity by pointing to a separate provision permitting courts to decide the arbitrability of class actions. There was a carve-out for class actions and representative actions, and the Mohammed Court said that did not create any ambiguity, that that was artificial. And the party's agreement here is materially indistinguishable from the one in Mohammed, so the result should be the same. The case should be compelled to arbitration. Let me ask you this. The second sentence of the arbitration agreement, there's a phrase saying, then the Court shall decide whether this agreement permits class proceedings. What's your best argument that that is unambiguous? That, Your Honor, is exactly what the language was in the Uber Mohammed case, and our argument is, Your Honor, that was a carve-out, an exception. So it's absolutely clear, as the Court said in Mohammed, the quote was, the agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator, except as pertains to the arbitrability of class actions. So here it's very clear. All the issues. But each side has a different perspective on that, does it not? Well, that's true, and that was true in Mohammed. That was true in the six decisions involving this exact agreement where district courts, including the Benveniste case, which we submitted last week in a 28-J letter, all of them rejected the interpretation that the plaintiffs make here. And again, that was the exact – I argued the Mohammed v. Uber case. That was the exact argument ten years ago that the plaintiffs made, and this Court said that's artificial. The plaintiffs' argument that that creates an ambiguity is artificial because it's clearly an exception. All issues of arbitrability go to the arbitrator. The agreement's clear. There's no challenge to that delegation clause, so it must be enforced under rent-a-center. And then it says, however, the issue of one issue, the question of class arbitration and the availability of class proceedings must be decided by the court. In the district court here, I should say, of all the decisions I've ever seen, this one drips with disdain for arbitration, the hostility towards arbitration. The court said it was like a weapon and threatened Rule 11 sanctions against Hyundai for filing a motion that six district courts have now granted because the court made clear it thought arbitration was bad and worse than being in court. That's what the Federal Arbitration Act – But the agreement was bad. He took issue with terms of the agreement. With terms of the agreement, but if you – Your Honor, he said it was – it would be shocking to a consumer that they would have to – in relating to their vehicles, in relating to, say, a defect. In fairness, he was pointing out that I think there was a concession at oral argument. There's no arbitration clause in the contract to buy the car, but there is in this Blue Link agreement that purports to cover everything and replace everything, all other agreements. That is correct, Your Honor. That's what the – in part, the judge was pointing to. That's what he didn't like. In – in – That's what he found shocking, I think. Yes. They think that was what was really the impetus for that. But that goes to the scope of the agreement, which is an issue for the arbitrator under the arbitrability provision in the delegation clause. And so the question of whether the agreement covers defects in the vehicle is an issue of scope. Clearly, under the contract, that goes to the arbitrator. And – So it's difficult, though, because there's also an argument regarding procedural and substantive unconscionability. And it's tough to reach that issue without deciding what the scope of the agreement is. And I – and I read your brief as being inconsistent about what the scope of the agreement is. Your Honor, the unconscionability, that's an enforceability and a validity argument. That also is an issue for the arbitrator. It's an issue – that's what Mohammed said. What's the scope of the agreement, counsel? That's what I'm trying to get at. Oh, the scope of the agreement, yes, Your Honor, absolutely. It covers all issues toward all theories relating to – and it's very explicit on this – relating to the Blue Link system, including the connection services and the like, and to complaints or torts or other causes of action, breach of warranty like here, that the owner of the vehicle would have with respect to the vehicle. So like here, with respect to the tow hitch, those would be covered by the arbitration agreement. There's nothing unusual about that. Can I ask you to respond to the following? Because I want to make sure that I understand your position on this. I think the agreement – again, no arbitration agreement in the contract for the car, we understand, although that's not part of our record, but I think that is now uncontested. Is that right? That's correct, Your Honor, and I don't think it matters, but I can explain why. Well, I do, but at any rate. So this Blue Link agreement reduces the statute of limitations from four years to one. I think that's uncontested. It waives remedies otherwise available under California law. It limits liability, Hyundai's liability, to $500, I think. It purports to replace all other agreements that the customer has with Hyundai. The exception to the arbitration provision is for IP and copyright claims. I don't know of any case law, but I invite you to let me know, you may well, where any customer has ever sued a manufacturer for a copyright or IP claim. So that seems one-sided to me, but that's for both of you to respond to. And then I think there's an admission on page one, or a statement, to be more neutral. On page one of your reply brief, it indicates that the reason there's no arbitration provision in the contract is that a recent California Supreme Court case wouldn't have allowed that under California law. Why should we find these aren't significant when we think about substantive unconscionability? First, Your Honor, I want to emphasize those unconscionability issues are issues for the arbitrator under the delegation. I understand. And if I don't agree with you about that threshold issue, then what about us? Then let me address the unconscionability. Okay. Fair enough. There would be no limit for a personal injury tort case regarding personal injury under the arbitration agreement. It would be litigation, arbitration. This is another assumption that the district court made. Arbitrators render large judgments all the time. I appreciate that, absolutely, but this does seem to me to replace all other agreements and send everything to arbitration, and there's this $500 limit on liability, and I don't see any limiting principle here anywhere. Your Honor, I don't think that in a tort case, again, that would be for the arbitrator to determine whether what the limit is.  You have raised that, planted that flag. I understand that.  But the agreement seems to me to be quite extraordinary. But I think it's the Rebich case from this Court talked about how the sort of looking at the parade of horribles, how it would play out, is not the proper approach. But I don't think there's the proper approach. What I've ticked off and invited you to respond to is, why aren't some of these provisions procedurally and submissively unconscionable? Let me just walk through that. Procedurally, Your Honor, here, there's no question that an agreement was formed. The district court found that the agreement was not hidden, that it was bold. This Court's decision in the Patrick case talks about the click wrap and sign up and intent. So we have an agreement to arbitrate. There was no, the district court found no evidence of pressure or the inability to read the agreement. It is a contract of adhesion with respect to the Blue Link services, but purchasers of the vehicle were not required to sign up for Blue Link. And we have an ongoing proceeding in the district court with individuals who did not sign up for Blue Link. So you have some degree, as this Court has said, with adhesion of procedural issues, but not tremendous because people bought the vehicle without signing up. And so the district court focused on the substantive. None of the issues that, let's see, most of the issues the Court mentioned are not part of the case here. There's a limit on liability, some of the other issues the Court mentioned. The big ones that the- When you say they're not part of the case here, we shouldn't consider them because- They haven't been argued by the plaintiff. We are looking at the agreement as a whole. The Court- Well, the Court can look at the agreement as a whole, but it's a very fair arbitration agreement. Well, I might beg to differ with you. But if you could go back to the scope of the agreement, it starts by saying, welcome to the Hyundai Blue Book Link for your Hyundai vehicle or Genesis Connected Services. The scope of this seems to be the Blue Link. And then in the middle of the arbitration provision, and this is what upset, I think, the district court, as you, I think, fairly acknowledged. His language makes clear that you took a dim view of it. But the word vehicle, of course, is in the middle of the arbitration clause. What about that? Your Honor, it's in the agreement. It's clear. There's nothing ambiguous about vehicle. And I hear what the Court's saying. Well, can I push back on that a little bit? Sure. Because given that, you know, all the canons of construction, and it's in the middle of the arbitration provision that refers to Blue Link Services, and the whole contract welcomes me to Blue Link Services, why wouldn't I consider that to be part of the vehicle that relate to the Blue Link Services? Well, Your Honor, that really goes, and this kind of was where we began, and the district court was troubled by the fact that this was an agreement that wasn't a purchase agreement. But this isn't like, he referenced this Disney case. This is totally different. The Blue Link Service is not some, he called it a concierge service. This is an ability to control your vehicle with an app. The vehicle's a big computer. And so you're able to start the engine. It's directly connected. Judge Selma said it in the Miranda case. It directly connects to, no pun intended, the functioning of the vehicle. And so it's not like out of the blue, I'm really full of puns today, that all of a sudden you're subject to arbitration regarding vehicle. I isn't out of the blue. There's no arbitration provision in the agreement to buy the car. But there is here in the Blue Link Services, which as you say is optional, and the footnote in your brief tells me that there's no arbitration provision because California law wouldn't have allowed Hyundai to include an arbitration provision in the vehicle contract. No, I don't think that's, well, the reason, I think. Did you want me to read the vehicle? Well, actually, Hyundai is not the seller of the vehicle. The dealer is. Yes. So Hyundai can't put a provision in that contract. Is that the import of your footnote? The dealers could put an arbitration agreement in the sales agreement. What is the import of your footnote? The first footnote in your reply. I think that's what we were referring to, Your Honor. That's what you meant? That's what we meant, that you're talking about the reply brief. Right. So why is it, so maybe I'll just leave it at that. If it is your position that's uncontested, there's no arbitration provision in the contract to buy the car, but there is in the Blue Link. Is that right? I'm just going to, let me just see, Your Honor, here. Yeah, our point. In reference to the 2025 case, which wouldn't have existed at the time. Your Honor, is that the manufacturer couldn't invoke an arbitration agreement in the dealer agreement for sale. We're not saying that arbitration wouldn't be appropriate in a sales agreement. That's what that footnote means. I didn't suggest to you. Okay. I think we've covered the point. Yeah, we couldn't enforce an arbitration agreement, and that's the first direct. If you could finish that sentence, that would be helpful to me. Yes, we couldn't enforce an arbitration agreement in the dealer sales agreement because the manufacturer is not a party to that agreement. And so what I want to go back to, because I see what's troubling the Court, that this agreement is not some disconnected, unrelated agreement to the vehicle. It's all about operating the vehicle. Emergency roadside assistance is providing these complementary services that are directly connected to the function of the vehicle. That's why all these district courts had no problem saying this is, the delegation clause sends these issues to the arbitrator. Again, Mohammed is binding on this Court. It's very clear. The issues Your Honor is discussing go to the arbitrator, and this Court must assume that the arbitrator would be fair and raise the same issues Your Honor is raising. I've taken up a lot of your time, but don't worry. There will be more where that came from. Let me just check with Judge Smith. Do you have questions at this point? I'm good for later. Judge Forrest, not at this point. Okay, thank you, Your Honor. You bet. I'll come back. Thank you. Good morning, Your Honors. Stephen Taylor for the plaintiffs from Lemberg Law. Could you pull that microphone up and just do your very best to speak into it so Judge Smith can hear you? Yes, Your Honor. Thank you. Good morning. Stephen Taylor for the plaintiffs from Lemberg Law. The Blue Link app has nothing to do with someone's tow hitch harness. Nobody who bought the Palisades with the optional harness would expect that a complimentary concierge service offered by Honda would require them to arbitrate all claims related to the vehicle and dramatically curtail their rights vis-à-vis Honda. When you say complimentary, you say that several times, and then there's reference to is it monthly charges, or how does this work? When I say complimentary, I mean free. But is it entirely free, or are there monthly service charges that people have to pay? In the terms of service it says, this is a three-year free product that is offered, and then they will start charging after that period, supposedly. Thank you. They say they will start charging. That clears it up. Thank you. And the complimentary is important because people aren't paying for this. They believe it is a complimentary concierge service. The district court below was rightly concerned with the surprise someone would have with having a complimentary service, which would then entrap or entangle all their rights and Honda's obligations regarding the entire vehicle purchase, its reliability, its mechanical soundness. Opposing counsel says that the Muhammad case is binding and directly on point. The Muhammad case is not on point for them. The Muhammad case says that where there is a venue provision, not a delegation exception, which is what we have here. When there's a venue provision saying that courts in northern California retain jurisdiction for certain claims, that doesn't confuse or make the delegation to the arbitrator unmistakable. Here, this is not a venue provision. What the agreement says is that the district court or a court, when a motion in a class action proceeding, will determine if the agreement permits class proceedings. That is not venue. That is saying that the court determines whether it's a class proceeding. And when we dig into that, we'll see what the district court found so troubling. How does the district court determine whether or not class claims are permitted under this agreement? The court has to go to the scope to see if the claims are wrapped up by the class action waiver that's in this agreement. If the court looks at, in the arbitration provision, on the page that discusses these matters, there's language that says you and Honda agree that claims must be brought at an individual capacity, but then it says, if this paragraph is found to be unenforceable in its entirety, then the entirety of this arbitration provision shall be null and void. So the agreement in one part says the court shall determine whether or not class proceedings can proceed under this agreement. Then below it says if the court finds that class proceedings can go forward, then the arbitration provision is null and void. In order for the court to make that secondary determination, it has to look at the scope of the claims at issue. It has to determine whether a problem with a tow hitch harness is encompassed by this agreement for Blue Link services. And once the court is at that level, this idea that all issues have been delegated to the arbitrator, it falls apart. And in Muhammad specifically, the court was not focused on that. The court was focused on a venue provision where the court found that, look, okay, you always got to go to a court to enforce an arbitration clause, or you may have to, and that's why we have a venue provision, and that's why the court said this distinction was artificial. The cases that this court should point to are the Baker and the Parada decision out of California appellate courts. And there what we're looking at is if the purported agreement is inconsistent about delegating all issues to the arbitrator, then there is not clear and unmistakable retention by the arbitrator of exclusive authority. And that's what we have here. This agreement is not clear and unmistakable on this issue. You seem to be focusing on, I suppose Mr. Boutros as well, the scope. If I understood Mr. Boutros' argument, he's basically saying this is a dealer issue, other people, Hyundai's really not directly involved. You're saying, not true, this is Hyundai, this is a kind of an issue, deals with the operation of the car. There's a, if you will, mis-joinder of issues. Do I understand your position correctly? Well, I'd say scope is important in several different parts of the arguments here. Scope is important when we're talking about whether or not the delegation provision is clear and unmistakable because you have to get to the scope of any class action waiver in class proceedings to determine if the court retained jurisdiction. And this agreement clearly contemplates that a court is going to be looking at those issues. And again, another issue with Mohammed, Mohammed has language in there that says, look, if part of a class action, if a class action waiver is found void or unenforceable, that issue stays with the court. And it specifically refers to the class action waiver and some other waivers that are in there. This agreement doesn't do that. This agreement is very broad. It says that the court retains jurisdiction to determine whether the agreement permits class proceedings. That's a Rule 23 analysis. That's an analysis to determine. It's also, you can also say it's an analysis to determine whether the class action waiver is void or applies to the claims in the case. Can I switch to a slightly different subject? And that's whether or not this is a contract of adhesion. Judge Christian laid out a number of items that at least by some people's standards would say, oh, wow, that's tough. How does that work? The cap on damages, the one year, et cetera, et cetera. Who determines whether this is a contract of adhesion, the court or the arbitrator? Great question. So the court can determine or it needs to determine if this is a contract of adhesion in the first instance when looking at whether the delegation to the arbitrator is valid or binding. That's the first thing, to look at just the delegation provision. And the issue here is that it is, we say it is procedurally and substantively, well, first we say there's no clear unmistakable intent to delegate. Then, as the court said below, it's procedurally and substantively unconscionable for this delegation provision and the arbitration provision to be enforced. Can I stop you there? Sure. Or just ask maybe if you could flesh this out in response to Judge Smith's questions. We have to find both procedural and substantive unconscionability.  And on substantive unconscionability, the district court was concerned about the statute of limitations being reduced from four years to one year. Correct. But I think we said that's okay, that it takes more than that. No. I think we've said it takes more than that. What other provisions, and this can be kind of a slippery slope about what's procedural and what's substantive. I just would like to hear what you have to say about what about this is substantively unconscionable. Just on the it takes more, and I believe they cite the Tompkins case for that. It takes more when that one-year statute of limitation goes both ways. This does not go both ways. This applies just to the plaintiffs, not to Hyundai. There is no limitation for the statute of limitations for them. But if I can go ahead and address other substantive unconscionability. One, what the court found below and what is correct is that by taking the entire vehicle and putting it into the arbitration clause, in the manner that this is done through third tier click links, it is substantively unconscionable. Because no one would expect to have something like their toe hit. You're talking about surprise. Aren't you talking about procedural unconscionability? Yeah, but I think there's overlap here. So the surprise is certainly part of the procedural unconscionability. But it's also substantively unconscionable to say that your blue link terms of service will require you to arbitrate things with your muffler, your toe hit, your transmission. What about the limitation of liability or waiver of remedies? On the waiver of... The cap on damages. Oh, yeah. So the cap on damages is actually less than 500. So it's 500. It's the greater of $500 or whatever you paid for a free service. Are you arguing that on appeal? We didn't mention it in our brief. It is in the terms of service. What are you actually advancing on appeal for what is substantively unconscionable? What is substantively unconscionable is the one-year statute of limitations and the final provision language, which says that all other agreements are void. Okay, so the very last paragraph of the agreement says that this is the entirety of agreement between us and HMA. It voids their new vehicle limited warranty. It voids any implied warranties. It voids everything. They argue that this is an integration clause, or it can be construed as an integration clause. It doesn't say it's an integration clause. This provision makes sense perhaps as an integration clause if the Blue Link terms of service only apply to Blue Link, which they clearly do. But as they're trying to apply it to the entire vehicle that these people purchase, this final provision vitiates all other agreements that, whether implied or explicit, that Hyundai has made and the promises. There is a new vehicle limited warranty. It does provide services. It is unconscionable, substantively unconscionable, to say that, okay, that is now gone. I don't expect Hyundai to come up here and say, we're going to do that, right? They haven't told any of their customers that that's what the Blue Link services do. But that's what this agreement says. It is unconscionable. And, you know, once we get into if plaintiffs or consumers are in arbitration, and we're in the arbitration forum, and this court says, okay, this agreement controls, they will have that provision. And that provision will say all your other agreements are void. So if you didn't bring your claim within a year, it's time barred. And if your claim is based on your express warranty, well, that doesn't matter either because these terms of service say those don't matter. And this doesn't incorporate them or say that they're valid. We agreed with you that one or more of these terms were substantively unconscionable. Why couldn't we sever them? Well, that's a great question. So what are we severing? So if we sever the one-year statute of limitations and we say, okay, that's unconscionable, we want to take that out. Well, you know, there are circumstances where you wouldn't sever that. That would be fine. So let's just say, let's play that out. So in this case, we conclude that of the laundry list of possibilities of things that are substantively unconscionable, that's the only one we find, the limitations period. And your argument is that wouldn't be severable as just a one provision that we think is improper? So one, I would argue that there are multiple provisions that are improper. I understand that that's your – but go with my hypothetical. Yes. If that's the only one that we find is unconscionable, can we sever it? And if your argument is no, why not? My argument would be that you would have to sever the reference to the vehicle. You would have to sever the reference in the scope of the agreement to the vehicle to make it. What does that have to do with the limitations period? Because then – If the limitations period is out, then everybody gets to bring whatever claims they have under the statute, you know, whatever the generally applicable limitations period is. What does your vehicle language have anything to do with that? Well, what your vehicle language has to do with that is that once we're in the realm of striking parts of the agreement or saying part of it is unenforceable, the court has already taken on the role of interpreting the agreement, which gets us past the delegation provision. And so I understand that this doesn't address your point about the vehicle language. But my point to your – my response to your first question, Your Honor, is once the court is in the position where it's striking out parts of this agreement, we've already stopped delegating it to the arbitrator. Yes, agreed. So now we're in the world where we're just looking at the scope of the agreement to determine whether or not the issues that are brought up in this case are within the scope of the arbitration clause. So even if the court were to sever part of it, I think once the court is taking that step, we're not in arbitration anymore. We're just looking at whether or not the claims in this case are within the scope of the agreement. Sure. And I think – I mean, that's a separate question, right? And I guess maybe one we would – I'm not quite sure what order we would analyze these issues in, but whether this dispute comes within the scope of the arbitration agreement is a separate question from if we find one or more of these terms unconscionable, are they subject to severance or not? Yes, Your Honor. And I guess we don't have to answer that second bucket of questions if we say this isn't even within the scope of the agreement. So my hypothetical is built on the assumption that we're within the scope of the agreement. Correct, Your Honor. So I think once – but, you know, once we start – again, once we start striking things, then the court has already taken the role in enforcing or – I agree, but I want an answer to the hypothetical. So we conclude – and, you know, I can't speak for the three of us yet, and I don't even know that I'm speaking for me yet. This is a hypothetical, right? We say that we can deal with the arbitrability questions. Once we say that this dispute is within the scope of the arbitration contract and now we have to see if the contract is valid in terms of unconscionability, and we go through that laundry list and we say this limitations period, that's bad. That is substantively unconscionable. Can we strike that? And if not, why? Sure, I think you can strike it, but then I also don't think that impacts whether or not my plaintiff's claims are subject to this arbitration agreement. Well, we have to find substantive unconscionability and procedural unconscionability, and so the hypothetical asks you to address that.  And you only get to the sliding scale if we've got some substantive unconscionability. Correct. So I would point to the final provision language, which is also substantively unconscionable. Can that one be stricken? So now we're striking two parts of the agreement. The part of the agreement that says that it replaces all other agreements? Correct. Okay. That's in our brief, Your Honor. Once we get to a point in an agreement where it's become so one-sided, severing things doesn't cure the agreement. Yeah, I'm trying to sort of figure out our case law in that space, which is why I'm asking these questions, because I think you could read our case law there to say if there's one discrete thing that you can strike, good enough, severance will work. Anything more than that, and then it's permeating the agreement. And I think you could read our case law to say, no, it's a little bit more involved than that, and you've got to do a little bit more analysis on permeation. How do you read the cases? I don't think there's a bright line. So I think you do arrive at some point. I think here, once you're striking something like the ‑‑ I think you could strike, you know, the statute of limitations is a discrete thing. The final provision language vitiates everything. I mean, it is incredibly broad as to what claims people are losing, what rights they're losing. But what if we struck it? What if we struck it, and then I had a claim about a breach of warranty or an extended service contract? What would control? Would it be these terms in terms of limitation of liability, or would it be something else? It would be whatever the warranty was, however the context it was made, and whatever the state law was about that warranty. I guess the question would be ‑‑ But then you'd have conflicting provisions. In this hypothetical warranty or extended warranty contract that I'm making up, let's say it would not have a limitation on liability, but this one does. So I don't know which one would ‑‑ how striking. I'm just asking you to play out this hypothetical about striking the last provision that says it replaces all other agreements. How would that work? So if you strike this last provision, then these other things come into play. So then someone all of a sudden does have the rights under their express warranty, which they obviously do, and that's what they purchased when they got the vehicle. I mean, you know, someone's claims would just have to be determined under that warranty, which is what happened to the vehicle. I think you'd still have ‑‑ what I'm trying to get you to grapple with is I think you'd still have other provisions of this agreement that would be in conflict. I don't know which would control. Well, a court would have to determine which one would control. All right. Judge Smith, do you have more questions? No. Judge Forrest, do you have more questions? I don't think I have more questions. Okay, thank you very much, Your Honors. Let me bring this back to Mohammed because it is ‑‑ I thought you might. You knew I was coming. It is directly on point. Counsel, there was a class action waiver provision in the agreement, Uber agreement, basically exactly like the one here. And even though the agreement in Uber said that all issues go to the arbitrator, it then said, notwithstanding that, the class action waiver question, whether class proceedings could occur, is to be decided by the court. That's exactly the agreement here. And counsel is wrong that the court only ‑‑ I mean, I understand that you want to say that those are functionally the same. But, I mean, I'm going to go back and look at Mohammed again and study it closely. But I don't see that these arguments or the two contracts, the contract there and the contract here are set up in the same way. I mean, we're talking about language, in our case, that is connected to the provision that we care about, right? I mean, it's the same paragraph. These things are going to go to an arbitrator, except for a court is going to decide this one aspect. And that seems different than the setup in Mohammed. It was virtually identical, Your Honor. It said, notwithstanding all these other provisions. And you're ‑‑ I mean, you said you're a counsel in that case. So those provisions, those two ideas that you're pointing to from the Mohammed contract, they're in the same paragraph? They're in the same provision? I don't ‑‑ I can't remember if they were in the same paragraph. But they were in the arbitration provision. Oh, I get that. But if you had two different ‑‑ if you had, like, here's our delegation clause, and then five or six or seven paragraphs later we've got a venue provision that's, like, not specific to the delegation issue. It's just a venue provision that's more generally applicable. I think that's different than this case. It is. That is different. But they also rely on the severability clause. That's what the district court looked at here because it mentioned a court deciding an issue. And, of course, the court does ‑‑ could decide that a provision is invalid, the class waiver proceeding. And that's what the court in Uber ‑‑ I would point, Your Honor, Judge Forrest, to pages ‑‑ really, page 1209 talks about both the venue provision and the class waiver. And it says the court also identified an inconsistency between the without limitation language, same as here, and the carve‑out provision in the 2013 agreement granting court jurisdiction over challenges to the PAGO waiver, which was the class action waiver. It was all together. And then the court said these conflicts are artificial. It's the exact same thing. And so there's just no question. That's what six courts, or at least five courts, one didn't really address with this issue. And the question is, the district court said, how do I figure out what to do? It's very simple. The Benveniste case that we sent to 28J in the latest decision was very simple. It said this is not ‑‑ we don't need black ‑‑ he didn't say this, but we don't need black stone to figure this out. There's all arbitrability issues go to the arbitrator, except that the court, if there's a motion to compel, decides whether class proceedings in the arbitration would be allowable. This isn't a Rule 23 issue. And here there's three different statements, two of them in all caps that say no class proceedings. So this is very simple. Mohammed is very clear it involved both the venue provisions and the class waiver provisions. The court said there was no conflict because the agreement just created an exception for the class waiver. So it's exactly like this case. And I did want to, on the scope issue, when we get to scope, if the court does not follow Mohammed, and I think the court must, on scope, once we get to that, if there's a dispute about the scope, the presumption of arbitrability under the FAA says that you go with arbitration. On the severability point, same issue came up in Mohammed. The district court had said you couldn't sever. Mohammed severed the provision that it found and said severability was appropriate. The statute of limitations could be severed. But it does, as we've conceded, include tolling. So it's not just a one-year you're out of court. On the liability provision, they haven't challenged it. That's not in the arbitration provision. I can't tell. I have conflicting notes about what they did or did not raise in the district court. So I'll have to go back and check. But the district court has this very sweeping statement that's hard to know what is packed in there. And the district court really only relied on two things on substantive unconscionability. The statute of limitations, which, again, it's a one-year, but it's subject to the tolling rules and discovery rule. And then the scope. It said it was unfair to have it be such a broad scope. He also mentions somewhere, but it's not in the same paragraph. So he also mentions a concern about the one-sidedness. He viewed it as one-sided. So I want to give you an opportunity to respond about the IP and copyright claims. Yeah, Your Honor, I think that is a carve-out. It's not an issue here. This isn't an IP case. So theoretically, someone could argue if they had an IP claim against Hyundai in a future case, that's unfair and that should be stricken and severed. But it would go to the arbitrator, who we must assume would be as fair as this court. But when we look at whether or not these provisions are or whether this contract is one-sided, is it your position that we only look at the provisions that are applicable to these plaintiffs? Yes. And we don't consider that this other provision that the district court was concerned about is one-sided and we don't consider that? I think so, Your Honor. Here, we look at the provisions that are at stake. I do think, to be fair, courts sometimes do look at the arbitration provisions more broadly. But it's not, when looking at that, that it's one-sided. It is true that it's probably rare that a consumer would bring an IP-related case. But that doesn't sound outrageous and shocking. That's the test. You're kind of way over time. But my question wasn't rhetorical. Do you know of any authority where we've done that? I believe it's the Revit case that we said that this could happen, this could happen, this could happen, the parade of horribles. And I don't think they're horrible. But my question was different. My question was, I was asking you about this IT provision. You know the one that I meant. Yes. That the district court was concerned with. And he said, hey, that's this one-sided. I am paraphrasing, of course. Yes. And I think you responded by saying, well, that's not at issue here. And my question was, well, wait a minute. Do we only look at the provisions that are at issue here in order to determine if the agreement is one-sided and your response is? I believe that's the correct approach, Your Honor, but I do believe courts sometimes do look at other provisions that hypothetically could be applied in a one-sided way. I'm not hearing you give me any authority for the proposition that we don't. Is that fair? That's fair, Your Honor. Okay. I wasn't trying to cut you off. Okay. Anything else from Judge Smith? No. Judge Forrest? Thank you for your patience with our questions. Thank you for your questions, Your Honor. You're welcome. We'll take that case under advisement and thank both counsel for their very helpful and effective advocacy. And we'll go on to the last case on the calendar.
judges: SMITH, CHRISTEN, FORREST